**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-03109-CMA-KLM

ANDREA COUSINEAU,

      Plaintiff,

v.

UNIFUND CCR PARTNERS,

      Defendant.

---

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant's Motion for Summary Judgment and for Attorneys' Fees and Costs (Doc. # 32).  In this case, Plaintiff Andrea Cousineau brings suit against Defendant Unifund CCR Partners for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*  (Doc. # 1.)  Defendant also requests that the Court to award it attorneys' fees on the grounds that Plaintiff brought this case in bad faith and for purposes of harassment.

### I.  BACKGROUND

The following facts are undisputed, unless otherwise noted.  The Court will elaborate, as needed, in the analysis section.

In 2003, Plaintiff divorced her husband.  Prior to the divorce, the couple had a number of credit cards, including an account which was later assigned to Chase Bank

U.S.A., N.A. (the "Account").  As part of the separation agreement between Plaintiff and her ex-husband, the ex-husband was supposed to be responsible for paying the debt on the Account.  (Doc. # 42-4 at 8.)  In order to have her name removed from the Account, Plaintiff and her ex-husband had to complete a form and send it to Chase.  The form indicated that the current liable card members would remain liable for the account balance "until [the] request has been received and approved."  (Doc. # 42-4.)  Notably, there is no evidence that Plaintiff's request to be removed from the Account was ever approved by Chase.

On November 27, 2007, Unifund Portfolio A, LLC purchased the Account and immediately assigned it to Defendant, a debt collector.  (Doc. # 32, ¶ 2.)  Chase provided Defendant with electronic information pertaining to the Account in an Original Data Source (the "Account Information").  (*Id.,* ¶ 4.)  The Account Information constituted Chase's representation as to the details necessary for Defendant to collect on the Account and identified Plaintiff as the holder of the Account.  (*Id.,* ¶¶ 4-5.)  The Account Information provided that the Account was charged-off on March 31, 2006, the date of the first delinquency on the Account was September 22, 2005, and the last payment date on the Account was August 30, 2005.  (*Id.,* ¶ 7.)  Chase also provided Defendant with a sworn affidavit from a Chase representative that Plaintiff was responsible for payment of the Account.

Defendant sent multiple letters in 2008 and 2009 to Plaintiff informing her that it was servicing the Account, providing the balance due, and advising her that she could

dispute the debt.  (Doc. # 32, ¶ 18.)  Through her attorney at the time, Plaintiff disputed

the debt directly to Defendant on February 9, 2009 and March 16, 2009.  Defendant

responded to each dispute notice on the same day, enclosing all the documentation that

it had received from Chase demonstrating that Plaintiff was responsible for the debt.

(*Id.*, ¶ 19.)  Plaintiff also filed a complaint against Defendant with the Colorado Attorney

General's Office.[1]  In response to the complaint, Defendant contacted Chase to inquire

whether Plaintiff was a responsible party for the Account.  Chase provided Defendant

with a letter dated September 23, 2008 that Chase had sent to Plaintiff informing her

that she was responsible for the Account.[2]  (Doc. # 34-9.)  On June 15, 2009, Defendant

responded to the Colorado Attorney General's Office and provided a copy of the

September 23, 2008 letter.  (Doc. # 32, ¶ 22.)  On July 2, 2009, the Colorado Attorney

General's Office sent a letter to Plaintiff stating that "we have determined to take no

further action at this time."  The Colorado Attorney General's Office also advised

Plaintiff that her complaint concerned alleged misconduct on the part of the original

creditor (*i.e.*, Chase), not misconduct by Defendant.  (Doc. # 32-1 at 48.)

---

[1] The parties do not say when Plaintiff filed her complaint with the Colorado Attorney General's Office.

[2] Plaintiff had also disputed the Account directly to Chase.  In the September 23, 2008 letter, Chase responded: "The Bank is not a party to the divorce decree and is, therefore, not bound by its terms.  Consequently, we are not able to delete this account from your credit report." (Doc. # 34-9.)

Defendant reported Plaintiff's debt to the credit bureaus.[3]  (Doc. # 32, ¶ 26.)

As a "furnisher of information," Defendant is required to report only two dates to the

credit bureaus when it reports a consumer account: (1) the date opened; and (2) FCRA

compliance/date of first delinquency.  (Doc. # 32, ¶ 27.)  Plaintiff's own expert witness

admitted that Defendant accurately reported the "date opened" and the "FCRA

compliance/date of first delinquency" on the Account.[4]  (*Id.*, ¶ 35-36.)  Defendant

received notification from credit bureaus that Plaintiff disputed the Account on August

28, 2008, September 12, 2008, January 18, 2010, and January 20, 2010.  (*Id.*, ¶ 39.)

Upon receipt of each dispute notice, Defendant investigated the dispute and provided

a response the very same day.  Each time, based upon the information it had received

from Chase, Defendant verified its reporting as correct.  (*Id.*, ¶ 40.)

Plaintiff brought this lawsuit on December 22, 2010.  (Doc. # 1.)  Defendant filed

the instant Motion for Summary Judgment on March 15, 2012.  (Doc. # 32.)  Plaintiff

responded on April 5, 2012, Defendant replied on April 19, 2012, and Plaintiff filed a

surreply on May 2, 2012.  (Doc. ## 42, 43, 46.)

[3] The parties do not say when Defendant reported the debt on the Account to the credit
bureaus.  However, Defendant first received notices of dispute from the credit bureaus
beginning on August 28, 2008, and so the Court assumes that Defendant reported the debt
to the credit bureaus sometime before August 28, 2008.  (Doc. # 32, ¶ 39.)

[4] According to industry guidelines, the "date opened" refers to "the date the account was
purchased by the debt buyer or placed/assigned to the third party collection agency."  (*Id.*,
¶¶ 28-29; Doc. # 34-11.)  Consistent with these guidelines, Defendant at all times reported
November 27, 2007 – the date it purchased the Account from Chase – as the "date opened"
for the Account.  The industry guidelines provide that the "FCRA compliance/date of first
delinquency" refers to "the date of the first delinquency with the original creditor that led to the
account being sold or placed for collection."  (*Id.*, ¶ 31.)  Defendant accurately reported that
date as being September 22, 2005.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. To meet that standard, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

5

*Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n. 1 (concerning shifting

burdens on summary judgment).  The nonmoving party may not simply rest upon its

pleadings to satisfy its burden.  *Anderson*, 477 U.S. at 256.  Rather, the nonmoving

party must "set forth specific facts that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d

at 671.  "To accomplish this, the facts must be identified by reference to affidavits,

deposition transcripts, or specific exhibits incorporated therein."  *Id.*

      The Court also notes that summary judgment is not a "disfavored procedural

shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'"  *Celotex*, 477 U.S. at 327 (quoting Fed. R.

Civ. P. 1).

### III.  ANALYSIS

**A.  FCRA CLAIM**

      Plaintiff alleges that Defendant violated the FCRA by failing to reasonably

investigate the notices of dispute that it received from credit reporting agencies

("CRAs").  Both parties agree that Defendant is considered a "furnisher of information"

under the FCRA.  *See Tilley v. Global Payments, Inc.,* 603 F. Supp. 2d 1314, 1322

(D. Kan. 2009) (defining a furnisher of information as "an entity which transmits

information concerning a particular debt owed by a particular consumer to consumer

reporting agencies.").  Upon receipt of a dispute from a CRA, the FCRA requires that

a furnisher of information must: (1) conduct an investigation with respect to the dispute,

(2) review all relevant information provided by the CRA, (3) report the results of the

investigation to the CRA, and (4) report the results of the investigation to all other

CRAs if the investigation reveals the information is incomplete or inaccurate.  15 U.S.C.

§ 1681s-2(b).

A furnisher's investigation after receiving notice of a consumer dispute must be

"reasonable."  *See Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431; *Gorman v.

Wolpoff & Abramson, LLP.*, 584 F.3d 1147, 1157 (9th Cir. 2009).  Plaintiff, however,

bears the burden of showing that Defendant's investigation was not reasonable.  *See

Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010).  Summary

judgment is proper when "the reasonableness of the defendant's procedures is beyond

question."  *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

Plaintiff contends that Defendant's investigations were unreasonable because

Defendant failed to discover documents from Chase showing that Plaintiff asked to

be removed from the account.[5]  This argument is unavailing.  To determine whether

Defendant's investigations were reasonable, the focus is not on the results of the

investigations, but on whether the procedures employed by Defendant were reasonable.

_____

[5] Because a furnisher's duties under § 1681s-2(b) arise only after it receives notice of a dispute from a CRA, the "pertinent question is whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute."  *Gorman*, 584 F.3d at 1157.  Unfortunately, neither party has provided the Court with a copy of the dispute notices that Defendant received from the CRAs.  Because Defendant is the party moving for summary judgment, the Court will assume that the dispute notices provided Defendant with accurate and detailed notice of Plaintiff's dispute.

*See Gorman*, 584 F.3d at 1161 (emphasizing that "the requirement that furnishers investigate consumer disputes is procedural.")

Plaintiff asserts that Defendant's investigation was "obviously incomplete" because it did not receive "call notes or minutes" or a "signed agreement" from Chase. (Doc. # 42 at 13.)  Even assuming *arguendo* that the "call notes or minutes" or a "signed agreement" were important to substantiate Plaintiff's dispute,[6] Plaintiff concedes that Defendant asked Chase to send it all of its documentation relating to the Account. (Doc. # 42 at 13) ("[Defendant] asked Chase for all of its records").  Thus, any incompleteness in Defendant's investigation was caused by Chase's failure to send information, not because Defendant conducted an unreasonable investigation.  Further, although Plaintiff asserts that the records sent by Chase were "obviously incomplete," the documents that Defendant received from Chase clearly show that Plaintiff was responsible for the Account.  Specifically, Defendant received a copy of the September 23, 2008 letter sent by Chase to Plaintiff stating that "we are not able to delete this account from your credit report."  (Doc # 32-1 at 43.)  Additionally, Defendant received a copy of a letter dated January 21, 2010, in which Chase informed Plaintiff that "[t]his account is [in] your name only and you are the liable party.  The bank is not obligated to the terms of a divorce decree." (*Id.* at 46.)  On the basis of these documents, a reasonable investigator would have concluded that its information was correct.

---

[6]  Plaintiff fails to explain how Defendant's receipt of the "call notes or minutes" or a "signed agreement" would have led to a favorable outcome for Plaintiff.  Plaintiff has not submitted any documentation showing that she was not liable on the Account.

In her response, Plaintiff relies heavily on *Johnson v. MBNA America Bank, NA*, 357 F.3d 426 (4th Cir. 2004).  In that case, the furnisher's investigation consisted solely of reviewing its own records, and the furnisher did not consult any underlying documents.  *See id.* at 429.  Here, in contrast, Defendant looked not only at its own records, but verified those records with the original creditor.  Defendant also investigated and provided a detailed response to Plaintiff's complaint with the Colorado Attorney General's Office, prompting that office "to take no further action."  (Doc. # 32-1 at 48.)

Furthermore, the documents that Plaintiff claims Defendant should have discovered do not absolve her of liability on the account; rather, the documents show that Plaintiff would be removed from the Account only after a request has been "received and approved."  (Doc. ## 42-4; 42-6.)  Because Plaintiff provides no evidence that Chase ever approved her request, these documents would have further supported Defendant's reporting that Plaintiff was liable on the Account.[7]   Thus, even if Defendant was somehow negligent in conducting its investigation by failing to discover these documents, Plaintiff has failed to show that the information furnished by Defendant was factually inaccurate.  *See Chiang*, 595 F.3d at 38 (holding that a plaintiff must show that the disputed information is inaccurate under § 1681s-2(b)).

---

[7] Plaintiff asserts that Chase made representations to her that she would be removed from the Account if she completed a form.  (Doc. # 42, ¶ 2.)  However, whether or not Chase somehow breached an informal agreement with Plaintiff has no bearing on whether Defendant's investigation was reasonable.

Based upon the undisputed facts of this case, no reasonable factfinder could determine that Defendant's investigation was unreasonable.  Further, no reasonable factfinder could determine that Defendant furnished the CRAs with inaccurate information given the absence of evidence showing that Plaintiff was not liable on the Account.  Thus, summary judgment is appropriate on Plaintiff's FCRA claim.

## B.    FDCPA CLAIM

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debts collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."[8]  15 U.S.C. § 1692e.

Plaintiff alleges that Defendant violated the FDCPA by reporting to the CRAs that Plaintiff "owed a debt that she did not and that the underlying debt was more recent than it was were [*sic*] in connection with an attempt to collect a consumer debt under a credit card."  (Doc. # 1 at 7.)  Courts have held, however, that "the allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and misleading practices' claim under the FDCPA."  *Reed v. AFNI, Inc.*, No. 09-CV-459,

---

[8] Defendant admits that it is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6). (Doc. # 5 at 4.)

2011 WL 112430, at *2 (D. Utah Jan. 13 2011) (quoting Bl*eich v. Revenue Maximization Grp. Inc.*, 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002).   Moreover, Plaintiff's own expert admits that Defendant accurately reported the "date opened" and the "FCRA compliance/date of first delinquency" at all times.  (Doc. # 32, ¶¶ 35-36.)  Thus, as a matter of law, Plaintiff's bare allegation that she was not liable on the Account is insufficient to support a § 1692e claim.

In her Response, Plaintiff states that she "would argue that reporting of the account after failing to investigate FCRA disputes is a misrepresentation."  (Doc. # 42 at 18.)  Although it is unclear whether Plaintiff is actually making such an argument, Plaintiff has not cited to any authority to support this specious argument.  Plaintiff appears to recognize the frivolity of her claim, conceding that she likely "will abandon this count."  (Doc. # 42 at 18.)  Moreover, as previously discussed, Defendant conducted a reasonable investigation after receiving notice of the dispute from the CRAs.  Thus, even if Plaintiff's argument had some basis in law (which it does not), it has no basis in fact.  Summary judgment is appropriate on Plaintiff's FDCPA claim.

## C.    DEFENDANT'S REQUEST FOR ATTORNEY'S FEES

Defendant contends that it is entitled to recover all attorneys' fees and costs for defending against this action because it was brought in bad faith.  (Doc. # 32 at 17-20.)  The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

11

15 U.S.C. § 1692k(a)(3).  Similarly, the FCRA provides that "the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper" when such pleading, motion, or other paper "was filed in bad faith or for the purposes of harassment."  15 U.S.C. § 1681o.

Although it is a close question, the Court finds that Plaintiff's FCRA claim was not brought in bad faith or for purposes of harassment.  Although the documents discovered by Plaintiff during discovery did not show that Plaintiff was absolved of liability on the Account, such documentation was not reviewed by Defendant during their investigation.  Thus, Plaintiff had some reason to believe that Defendant failed to conduct a reasonable investigation.  Moreover, given Plaintiff's seemingly sincere belief that she was removed from the Account, it is somewhat understandable that she believed Defendant had negligently failed to find proof of such removal.  Although Plaintiff's FCRA claim borders on the frivolous, the Court finds that it was not brought in bad faith or to harass.

With regard to Plaintiff's FDCPA claim, the Court finds that this claim was brought in bad faith and for purposes of harassment.  Plaintiff has actively litigated this claim for well over a year, yet has failed to identify a single misrepresentation made by Defendant that could possibly support a § 1692e claim.  Defendant warned Plaintiff numerous times that it would seek attorneys' fees under § 1692k(a)(3) if Plaintiff continued to pursue this lawsuit.  Even now, after admitting that she will likely abandon

12

her FDCPA claim before trial, Plaintiff has refused to abandon this frivolous claim. Given the absence of any "false, deceptive, or misleading representation[s]" made by Defendant, the Court finds that Plaintiff brought her FDCPA claim with the primary purpose of harassing Defendant. *See Smith v. Argent Mortg. Co.*, 331 Fed. Appx. 549, 559 (10th Cir. 2009) (unpublished) (affirming award of attorneys' fees where the plaintiffs did not present any evidence to support their FDCPA claim).  Thus, the Court finds that Defendant is entitled to reasonable attorneys' fees expended in defense of Plaintiff's FDCPA claim.  15 U.S.C. § 1692k(a)(3);

However, to determine reasonable attorney fees, "the Tenth Circuit requires a sufficient factual record to support a claim for attorneys' fees and expenses." *Obenauf v. Frontier Fin. Grp., Inc.*, 785 F. Supp. 2d 1188, 1206 (D. N.M. 2011) (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256-57 (10th Cir. 1998).   Although the Court finds that Defendant is entitled to reasonable attorneys' fees in defending against Plaintiff's FDCPA claim, Defendant has not provided sufficient documentation for the Court to determine whether the requested fees are reasonable.  Thus, the Court denies without prejudice Defendant's request for attorneys' fees.  Defendant has fourteen days from the date of this Order to file a properly supported motion for attorneys' fees documenting the fees expended in defending against Plaintiff's FDCPA claim.

IV.  **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendant's Motion for Summary

Judgment (Doc. # 32) is GRANTED.[9]

It is FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

The Final Trial Preparation Conference set for October 4, 2012, and the three-day Jury

Trial set to commence on October 22, 2012, are VACATED.

It is FURTHER ORDERED that Defendant has fourteen (14) days from the date

of this Order to file the appropriate documentation so that the Court can determine an

award of attorney fees.

DATED:  July   31  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[9] On June 28, 2012, Plaintiff filed a "Motion for Leave to File Supplemental Submissions in Opposition to Plaintiff's [*sic*] Motion for Summary Judgment and to Withhold Ruling Pending Submission." (Doc. # 54.)  In the motion, Plaintiff requests that the Court withhold ruling on Defendant's Motion for Summary Judgment on the basis of a recently conducted deposition. Based on Plaintiff's proffer, the content of the deposition is wholly irrelevant to the issues raised in Defendant's Motion for Summary Judgment.  As the Court finds that Defendant is entitled to summary judgment, Plaintiff's motion to supplement (Doc. # 54) is DENIED AS MOOT.